MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2015 ME 17
Docket:        And-14-142
Submitted
  On Briefs:   December 1, 2014
Decided:       February 26, 2015

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

CITIMORTGAGE, INC.

v.

RONALD CHARTIER et al.

HJELM, J.

[¶1]  Ronald and Amy T. Chartier appeal from a judgment of foreclosure entered by the District Court (Lewiston, *Beliveau, J.*) in favor of CitiMortgage, Inc. after a non-jury trial.  The Chartiers contend that the court erred in entering judgment against them because the notice of default provided by CitiMortgage did not satisfy the requirements of the mortgage.  We agree and vacate the judgment.

## I. BACKGROUND

[¶2]  Viewing the record in the light most favorable to the prevailing party, CitiMortgage, the following facts were established at trial.  *See Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 3, 914 A.2d 1116.  On May 11, 2007, Amy executed a promissory note in favor of Cornerstone Home Loans.  In order to secure performance under the note, Amy and her husband, Ronald, executed a

2

mortgage in favor of Cornerstone encumbering their residential property in Lewiston. On May 14, 2007, Cornerstone assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). At around the same time, Cornerstone indorsed the note to Merrimack Mortgage Company, Inc., which also serviced the mortgage. In June 2007 the servicing of the mortgage was transferred from Merrimack to CitiMortgage, Inc., and Merrimack eventually indorsed the note to CitiMortgage.[1] On December 2, 2008, CitiMortgage sent Amy a letter notifying her that the loan was in default and that she needed to pay the past due amount within thirty days in order to cure the default. On December 14, 2009—more than a year after CitiMortgage sent the notice of default to Amy—MERS assigned the mortgage to CitiMortgage.[2]

[¶3] In February 2010, CitiMortgage filed a complaint in District Court, alleging that Amy was in default on the secured loan because she had not made any payments since October 1, 2008, and seeking foreclosure of the mortgage. In their

---

[1] No evidence was presented to show when the note was indorsed to CitiMortgage or when CitiMortgage first obtained possession of the note. However, CitiMortgage did own the note at the time it filed its complaint.

[2] The 2007 assignment of the mortgage from Cornerstone to MERS transferred all of Cornerstone's rights under the instrument. MERS's subsequent assignment of its rights to CitiMortgage therefore does not implicate the standing issues addressed in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 6-17, 96 A.3d 700, where MERS purported to assign greater rights than it held as the nominee of the original mortgagee.

answer, the Chartiers alleged, among other things, that CitiMortgage failed to provide a notice of default and right to cure as required by the mortgage.

[¶4] The case proceeded to trial in January 2014, and on March 11, 2014, the court entered a judgment of foreclosure for CitiMortgage in the principal amount of $176,882.46, plus attorney fees and costs. The judgment was accompanied by written findings of fact and conclusions of law, including the court's conclusion that the notice of default complied with the terms of the mortgage. The Chartiers appealed.

## II. DISCUSSION

[¶5] The dispositive inquiry in this case is whether the notice of default sent by CitiMortgage complied with the conditions in the mortgage instrument. At the time CitiMortgage sent the notice of default, the statute governing sufficiency of such notices was 14 M.R.S. § 6111 (2008).[3] The parties stipulated at trial, however, that, pursuant to 14 M.R.S. § 6111(5)(B), CitiMortgage was exempt from the requirements of the statute.[4] Furthermore, on appeal, CitiMortgage argues that

---

[3] Title 14 M.R.S § 6111 was amended in 2009 to change some of the notice requirements. P.L. 2009, ch. 402, §§ 10-14 (effective June 15, 2009); P.L. 2009, ch. 476, §§ A-2, B-2 (effective Feb. 24, 2010) (codified at 14 M.R.S. § 6111 (2014)).

[4] Title 14 M.R.S. § 6111(5)(B) (2008), which has since been repealed, *see* P.L. 2009, ch. 476, § A-2, (effective Feb. 24, 2010), provided:

> This section does not apply to . . . [a] mortgage that contains a requirement that a reinstatement notice, a notice of right to cure or an equivalent notice be given to the mortgagor at least 30 days prior to accelerating the maturity of the unpaid balance of the

the notice of default needed to comply only with the terms of the mortgage. Therefore, neither party has preserved the argument that the notice of default must meet the requirements of section 6111, *see Bangor Sav. Bank v. Richard*, 2014 ME 20, ¶ 3, 86 A.3d 1167, and we examine the sufficiency of the notice of default based only on the requirements of the mortgage, *see Bank of Me. v. Hatch*, 2012 ME 35, ¶ 10, 38 A.3d 1260.

[¶6] CitiMortgage contends that the notice of default in this case "fully complie[d]" with the terms of the mortgage. The Chartiers argue, however, that CitiMortgage did not satisfy the terms of the mortgage because the mortgage requires the "lender" to send the notice of default, and CitiMortgage was not the "lender" as defined in the mortgage. We agree.

[¶7] Whether, pursuant to the mortgage, CitiMortgage was the "lender," and thus the proper party to send the notice of default, is a matter of contract interpretation. *See Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶¶ 18-19, 25 A.3d 960. "We review the meaning of a contract de novo and interpret an unambiguous provision according to the plain meaning of its terms." *Id.* ¶ 19.

---

obligation or otherwise enforcing the mortgage against the mortgagor, if the mortgagee gives such a notice to the mortgagor and to any cosigner against whom the mortgagee seeks to enforce the obligation secured by the mortgage.

The mortgage in this case contains a provision requiring that notice of default and the right to cure be given at least 30 days before accelerating payment.

[¶8]  Pursuant to the mortgage, "Lender may require immediate payment in full," and subsequently foreclose on the mortgaged property, only if "Lender sends to [the borrower] . . . a notice" that the borrower is in default.  "Lender" is defined in the mortgage as Cornerstone Home Loans or "any Person who takes ownership of the Note *and* this Security Instrument."  (Emphasis added.)  That definition is unambiguous: in order to send a notice of default that complies with the mortgage, CitiMortgage needed to own both the note and the mortgage.  The undisputed evidence, however, establishes that when CitiMortgage sent the notice of default, the note and mortgage were owned by separate entities.[5]  Thus, pursuant to the terms of the mortgage, CitiMortgage was not a "lender" with authority to send the notice.

[¶9]  CitiMortgage argues that, when it issued the notice of default, it had implied authority to act on behalf of MERS, the mortgagee at the time, because it was the servicer of the mortgage.  Even if CitiMortgage was acting as MERS's agent, however, the fact remains that when CitiMortgage sent the notice of default, the note and mortgage were not in common ownership, and no one, including MERS, was the "lender" as defined in the mortgage.

---

[5]  When CitiMortgage issued the notice of default in December 2008, MERS owned the mortgage, but there is no evidence that it owned the note.  The indorsements on the note reflect that it was owned by either by Merrimack or CitiMortgage.  The determination of which entity owned the note is not material to this case, however, because as long as the note was owned by an entity other than MERS, there was no "lender" as defined in the mortgage.

6

## III. CONCLUSION

[¶10]  The mortgage allowed CitiMortgage to foreclose only if the conditions regarding the notice of default were met.  Because the notice of default sent to the Chartiers failed to satisfy those conditions, CitiMortgage is not entitled to a judgment of foreclosure.[6]

The entry is:

> Judgment vacated. Remanded to the District Court
> for entry of judgment for the Chartiers.

**On the briefs:**

Joshua Klein-Golden, Esq., Clifford & Golden, PA, Lisbon Falls, for appellants Ronald Chartier and Amy Chartier

Donald E. Frechette, Esq., Edwards Wildman Palmer LLP, Hartford, Connecticut, for appellee CitiMortgage, Inc.

Lewiston District Court docket number RE-2010-29
FOR CLERK REFERENCE ONLY

---

[6] Because we vacate the judgment on the ground that CitiMortgage's notice of default did not comply with the terms of the mortgage, we need not reach the Chartiers' alternative argument that the court erred at trial by admitting, in violation of M.R. Civ. P. 56(d), affidavits that were part of the record associated with the parties' cross-motions for summary judgment.  We note, however, that the purpose of that Rule is "to make it unnecessary to controvert facts for purposes of summary judgment solely because of concern about the possible preclusive effect of any admission of fact at trial or in other subsequent proceedings."  M.R. Civ. P. 56 Advisory Note to 2011 amend.  That purpose is not implicated where, as here, a trial court considers, but does not give preclusive effect to, sworn affidavits submitted in connection with a motion for summary judgment.